IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JACQUE CUGGINO, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Case No.  4:15-CV-00250-CEJ |
| | ) |
| NATIONWIDE INSURANCE COMPANY | ) |
| OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF JACQUE CUGGINO'S MEMORANDUM IN SUPPORT OF NEW TRIAL**

COMES NOW Plaintiff, Jacque Cuggino, and for her Memorandum in Support of New Trial states as follows:

**I.     Standard of Review**

A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial resulted in a miscarriage of justice.  *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996).

**II.    The trial court erred by not allowing evidence of Nationwide's handling of the water mitigation associated with Plaintiff's 2012 water loss and insurance claim and by admitting photographs of such water loss**

Central to the jury verdict was their apparent conclusion that Plaintiff had not properly mitigated her damages, in that Plaintiff did not retain a water mitigation company after the fire and firefighting efforts.  Plaintiff's testimony was that she did not know she was supposed to retain such a company, and believed such to be the responsibility of Nationwide.

At the trial of this matter, counsel for Nationwide inquired of Plaintiff about a previous water loss sustained by the subject property in 2012.  Counsel for Nationwide asked Plaintiff multiple questions about pictures showing "Serv-Pro" fans and other evidence of water mitigation efforts after this 2012 water loss, and implied throughout the trial that Plaintiff knew

1

that water mitigation was necessary. Those photographs were admitted over counsel for Plaintiff's objection. When counsel for Plaintiff attempted to inquire of Plaintiff as to the circumstances surrounding her insurance claim for the 2012 water loss, the trial court prohibited such testimony. Specifically, Plaintiff was unable to testify that (a) her insurance company to whom she made the claim for the 2012 water loss was Nationwide, and (b) that Nationwide handled all aspects of the water mitigation following the water loss. Had the jury heard this evidence, it would have reached a different result, as it would have understood why Plaintiff did not retain a water mitigation company following the January 11, 2014 fire, assuming that her insurance company would have handled such just as they did in 2012. As such, the exclusion of this evidence was fatal to Plaintiff's claim and warrants a new trial.

### III.     The trial court erred by not allowing evidence of cost to repair

The trial court granted Defendant's Motion in Limine Regarding Replacement/Repair Cost, and prohibited evidence of the cost to repair or replace Plaintiff's dwelling. As such, the jury was never presented with any evidence of Plaintiff's cost to repair her dwelling. Because this evidence was clearly relevant and admissible, the exclusion of this evidence was so prejudicial in that its admission would likely have produced a different result. *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 417 F.3d 820, 833 (8th Cir. 2005).

#### a)     As the appropriate measure of liability, the "cost of repair or replacement" was determinative

When she purchased the subject insurance policy from Nationwide Insurance Company, Ms. Cuggino elected to pay an additional premium in consideration for a "Dwelling Replacement Cost" endorsement attached to the Insurance Policy (Doc 58-1, p. 50). With that endorsement, Nationwide agreed to pay "the cost of repair and replacement, but not exceeding the replacement

cost of that part of the building damaged, for like construction and use on the same premises" up to 125% of the limit of liability for Coverage A ($354,887.50).

In its motion in limine, Nationwide contended that evidence of "the cost of repair or replacement" was irrelevant in that Plaintiff had not repaired or replaced any of the damage to the Property, citing another provision within the "Dwelling Replacement Cost" endorsement. However, that alternative provision (#2) would render the provision cited above (#1) superfluous.  There is nothing in the provision cited above (#1) that renders it subject to or contingent upon that provision cited by Nationwide (#2).  At the very least, there is an ambiguity in the "Dwelling Replacement Cost" endorsement that mandated application of the interpretation advanced by Ms. Cuggino.

The interpretation of an insurance company is a question of law.  *Seeck v. Geico General Insurance Co*., 212 S.W.3d 129, 132 (Mo. 2007).  In construing the terms of an insurance policy, this Court applies "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance", and resolves ambiguities in favor of the insured.  *Id*.  An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy.  Language is ambiguous if it is reasonably open to different constructions.  *Id*.  If policy language is ambiguous, it must be construed against the insurer.

A reasonable reading of the "Dwelling Replacement Cost" endorsement by an ordinary person of average understanding is that (1) Nationwide agreed to pay the cost of repair or replacement (a) not exceeding that part of the building damaged and (b) for like construction and use on the same premises **OR** (2) that Nationwide agreed to only pay the actual cash value of the damage until the repair or replacement was completed, but without the limitations of 1 (a) and 1(b).  In fact, this interpretation of the "Dwelling Replacement Cost" endorsement is consistent

3

with Nationwide's interpretation of similar provisions in the "Personal Property Replacement Cost Endorsement" and on pages 16 and 17 of the underlying policy (Doc 58-1, p. 27-28). Despite significant personal property losses, the case was not about personal property because Nationwide properly paid the "cost to replace" Ms. Cuggino's personal property without requiring evidence of repair or replacement in advance. Examples of insurance policies determined to be ambiguous abound. *Id.*; *Wilson v. American Family Mutual Insurance Company*, 472 S.W.3d 579, 592-93 (Mo. Ct. App. 2015)(holding the policy definition of "replacement cost" to be ambiguous); *Dibben v. Shelter Insurance Company*, 261 S.W.3d 533 (Mo. Ct. App. 2008)(holding the policy definition of "replacement cost" to be ambiguous); *See also Labrier v. State Farm Fire and Casualty Company*, 2015 WL 7738362, *8 (W.D. November 30, 2015)(for an example of an unambiguous definition of when replacement cost is paid, which Nationwide determined to not include in the Insurance Policy).

Because the proper measure of liability on the part of Nationwide was whether or not Nationwide paid Plaintiff the "cost to repair", exclusion of its evidence was greatly prejudicial to Plaintiff's case in that its conclusion would have produced a different result.

    **b)**     <u>**Alternatively, the "cost of repair or replacement" was relevant to Plaintiff's claim that the subject property was a "total loss"**</u>

In any action brought under a fire insurance policy, Missouri's valued policy statute provides that the value of the insured real property is equal to the full amount for which the property was insured when the policy was issued. Mo. Rev. Stat. §379.140. With respect to the Property, that value is $283,910.00. Doc 58-1, p. 10; Doc 58-1, p. 47 (combining Coverage B into Coverage A). If the insured real property has suffered a total loss, the measure of damages equals the amount for which the property was insured, minus the depreciation from the time the policy was issued to the time of loss. Mo. Rev. Stat. §379.140. The burden of proving

4

depreciation rests with the insurer. *Kilpatrick v. Hartford Fire Ins. Co., Inc*., 701 S.W.2d 755 (Mo. Ct. App. 1985). A structure can be considered a total loss when (a) when the structure has lost its identity as a building, when (b) no prudent and uninsured individual would rebuild the structure or (c) when rebuilding the structure would be more expensive than simply starting over. *Stahlberg v. Travelers Indem. Co*., 568 S.W.2d 79, 84 (Mo. Ct. App. 1978); *Patriotic Ins. Co. of America v. Franciscus*, 55 F. 2d 844, 849-50 (8th Cir. 1932); *Petrovic v. Standard Fire Ins. Co. of Hartford, Conn.,* 167 S.W.2d 412, 416 (Mo. Ct. App. 1943).

Under the "identity theory", a structure is a total loss when it has "lost its identity and specific character as a building, and become so far disintegrated that it cannot be property designated as a building although some part of it may remain standing". *Id*. It need not be wholly razed; "to say that a building is destroyed only when there has been such a total annihilation of its parts is to use the word in a sense in which it never is used in common speech". *Heart of America Lumber Co. v. Belove*, 28 F. Supp. 619, 620 (W.D. Mo. 1949).

A structure can also be considered a total loss under the "constructive loss theory". Under this theory, "there is a total loss by fire if the building is so damaged that no substantial remnant remains that a prudent uninsured person would use on rebuilding". *Stahlberg*, 568 S.W.2d at 84. Finally, a structure can be a total loss if rebuilding it would be more expensive than simply starting over. *Patriotic Ins. Co. of America*, 55 at 849-50; *Petrovic*, 167 S.W. 3d at 416; 12 Couch on Insurance §175:74 (3d ed. 2008)("The court may also make a determination that a total loss has occurred based on the fact that it may be economically unfeasible to reconstruct the damaged building").

In this case, the Court excluded evidence of the "cost to repair". As such, the jury was unable to evaluate said costs in determining whether the elements of a "total loss" were present.

5

Those elements specifically contemplate the respective "cost to repair" as described herein. As such, Plaintiff was severely prejudiced by the exclusion of such evidence in that its inclusion would have produced a different result.

> **c)** **Even if the jury only believed the subject property to be a "partial loss", the "cost of repair or replacement" was relevant**

Even if the jury believes the loss sustained by the subject property to be a partial loss, every case located by counsel for Plaintiff has determined such evidence to still be relevant, just not determinative in and of itself. *See Wells v. Missouri Property Insurance Placement Facility*, 653 S.W.2d 207, 210 (Mo. 1983)("cost of repair is admissible as evidence of damage, but of itself it is insufficient to establish the amount of damage"); *Langdon v. Koch*, 393 S.W.2d 66, 70 (Mo. Ct. App. 1965)("the cost of repairs or restoration is competent evidence [citation omitted] and, where there are additional facts (in reference to the condition of the car, for instance) to support such, the different in market value before and after value may be found or inferred"); *Brown v. Pennsylvania Fire Ins. Co.*, 263 S.W.2d 893, 899 ("evidence of the cost of repair is a proper element to be considered, but it is not conclusive of the value of the property after the loss").

Given that "cost to repair" has been determined by Missouri Courts to be a proper element to be considered on fire loss cases, its exclusion from evidence was severely prejudicial to Plaintiff and its inclusion would have produced a different result.

> **d)** **Even if the "Dwelling Replacement Cost" endorsement is determined to be unambiguous and Nationwide's position accepted, the "cost of repair or replacement" is still relevant in that Nationwide improperly withheld depreciation**

In *Labrier*, the insured's interpretation of the subject insurance policy was that the actual cash value of labor and items on the insurance company's estimate that combined labor and

6

materials were properly paid at a replacement cost standard, without depreciation. The United States District Court for the Western District determined that this interpretation was reasonable and accordingly denied State Farm's Motion to Dismiss. In the present case, Nationwide depreciated numerous items that encompass labor. See Doc 58-2, p. 3, #6, 11; p. 4, #12, 14, 15, 16, 19, 22, 24; p. 5, #29; p. 6, #42, 44, 47, 48; p. 7, #63, p. 8, #82; p. 11, #92, 96, 100, 101; p. 12, #104, 106, p. 13, #113, 117, 120, 121; p. 15, #130, 133, 135; p. 16, #143, 145, 147; p. 17, #160, 166, 167; p. 18, #173, 176, 179, 180, 182; p. 20, #187, 188, 190, 193, 195, 197, 198; p. 21, #204, 206, 209, 213, 214; p. 22, #220, 224, 226, 229; p. 24, #235, 239, 243, 244, 246; p.25, #252, 254, 257, 258; p. 27, #264, 267, 270, 273, 274; p. 29, #280, 283, 285, 287, 290; p. 31, #297; p. 32, #311; p. 33, #313; p. 34, #315.

In that the "cost to repair" was excluded on items for which it was the proper measure of damages (ambiguity aside), its exclusion severely prejudiced Plaintiff and produced a different jury verdict than otherwise would have resulted.

**IV.     The trial court erred by not allowing evidence of code upgrade costs**

The trial court granted Defendant's Motion in Limine Regarding Code Upgrade Costs, and prohibited evidence of these costs. As such, the jury was never presented with any evidence of Plaintiff's code upgrade costs which were necessary because of the subject fire. Because this evidence was clearly relevant and admissible, the exclusion of this evidence was severely prejudicial in that its admission would likely have produced a different result. *Diesel Mach., Inc.*, 417 F.3d at 833.

Plaintiff purchased an endorsement to her insurance policy which permitted her to use up to 20% of the limit of liability that applies to Coverage A for code upgrade costs, or $56,782.00

7

(taking into account the addition of the Coverage B limit of liability to that of Coverage A per the Other Structures Endorsement (Doc 58-1, Page 47)).

The policy language cited by Nationwide in its Motion in Limine did require these costs "be incurred". However, the governing law does not connote "costs you incur" with "costs you pay". There is no dispute that the City of Ballwin is requiring significant code upgrades with any repair or replacement of the subject property. As set forth *supra*, those code upgrade costs that Ms. Cuggino could afford given the insufficient payments to date by Nationwide have been paid; others have not. **But they were all incurred**.

Missouri courts have consistently distinguished amounts "incurred" from amounts "paid". *Berra v. Danter*, 299 S.W.3d 690, 697 (Mo. Ct. App. 2009); *Litton v. Kornbrust*, 85 S.W.3d 110, 115 (Mo. Ct. App. 2002); *Burwick v. Wood*, 959 S.W.2d 951, 952 (Mo. Ct. App. 1998); *Next Day Motor Freight, Inc. v. Hirst*, 950 S.W.2d 676, 680 (Mo. Ct. App. 1997).

In *Berra,* the Missouri Court of Appeals for the Eastern District affirmed a trial court's ruling connoting amounts billed by medical providers as amounts incurred, despite the fact they were not paid. *Berra*, 299 S.W.3d at 697-698. In *Burwick*, the court rejected the argument that a party had not "incurred" deposition costs because they were paid by an insurer. *Burwick*, 959 S.W.2d at 952. In *Litton*, the court rejected the argument that a deceased party for whom no estate had been opened had not "incurred" deposition expenses, even though those costs were incurred after the party's death and had been paid by the decedent's insurer. *Litton*, 85 S.W.3d at 115-117.

In *Next Day*, the Missouri Court of Appeals for the Eastern District considered the meaning of "incurred" in the context of determining the reasonableness of an award of attorneys' fees to the plaintiff corporation. *Next Day*, 950 S.W.2d at 680. Plaintiff's president had testified

8

he had "incurred" $20,000.00 in attorneys' fees to collect a very small judgment, but he had not testified that he had paid them. *Id.* The court cited Webster's and held as follows: "'Incur' is 'become liable or subject to'. It is a synonym of 'accrue'. Webster's Third New International Dictionary 1146 (1981). Accruing or incurring attorneys' fees is not the same as paying. *Id.* The court found that the lack of evidence of payment of attorneys' fees was significant in determining the $20,000 amount awarded for attorneys' fees was unreasonable. *Id.*

Because Plaintiff incurred significant code upgrade costs covered by the subject insurance policy, evidence of said costs (up to $56,782.00) was clearly relevant and admissible, and their exclusion significantly prejudiced Plaintiff's case and would have resulted in a different verdict.

## V.     **The jury verdict was against the weight of the evidence presented at trial**

The overwhelming evidence at trial pointed not only to Nationwide's breach of the underlying insurance contract, but also its vexatious conduct in connection with said breach. This evidence included:

- Nationwide's admission that there was already fire, smoke, and water damage throughout the entirety of the property in the days immediately following the fire (Testimony of Michael Scott)

- Plaintiff's expert testimony of the many breaches of the insurance contract on the part of Nationwide (Testimony of Stan Williams)

- Plaintiff's expert testimony of the vexatious conduct on the part of Nationwide (Testimony of Stan Williams)

- Testimony from multiple witnesses that the water and mold damage to the property's basement was a direct and proximate result of the fire (Testimony of Jacque Cuggino, Stan Williams, Michael Scott, Tom Alford, Damon Sagehorn)

- Testimony that the Property was a total loss for many reasons, primarily because of the necessity of removing the property's walls and floors (Testimony of Mike Roberts, Stan Williams, Damon Sagehorn, Jacque Cuggino)

In light of this overwhelming evidence, the jury's verdict in favor of Nationwide was clearly against the weight of the evidence presented at trial, warranting a new trial.

### VI.   Conclusion

For the reasons set forth herein, Plaintiff Jacque Cuggino respectfully requests a new trial.

/s/Michael K. Daming
Michael K. Daming, MoBar #52864
Wasinger Daming, LC
Magna Place, Suite 875
1401 South Brentwood Boulevard
St. Louis, Missouri 63144
mdaming@wasingerdaming.com
(314) 961-0400
(314) 961-2726 FAX

Attorney for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

  The undersigned hereby certifies that a copy of the foregoing instrument was served through the court's electronic filing system on August 29, 2016 to:

Nikki E. Cannezzaro
Franke Schultz & Mullen, P.C.
8900 Ward Parkway
Kansas City, MO  64114

              /s/Michael K. Daming